**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAFIS QUAYE, | : | Civil No. 1:25-CV-02458 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN J. GREENE , | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Nafis Quaye ("Petitioner"), an inmate currently housed at the Federal Correctional Institution Allenwood Low ("FCI-Allenwood"), and a motion for emergency jurisdiction and support, which reads more as a memorandum in support of the petition. (Docs. 1, 2.) For the following reasons, the court will deny Plaintiff's petition and direct the Clerk of Court to term the pending motion because it is not actually a motion.

### Background and Procedural History

On September 4, 2024, Petitioner was found guilty of conspiracy to commit money laundering and sentenced to sixty-months imprisonment to be followed by two years of supervised release. *Quaye v. USA*, No. 1:22-CR-0046-SE-2, Doc. 138 (D.N.H.). In addition to the imprisonment and supervised release, Petitioner was ordered to pay an assessment of $100.00 and restitution of $3,287,200.00 with

interest waived for the restitution. *Id*. Special instructions for payment provided the following:

> Payment is ordered to begin immediately. Payments shall be made in equal monthly installments of $200 within 30 days of commencement of supervision and thereafter. Upon the defendant's commencement of supervision, the probation officer shall review the defendant's financial circumstances and, if necessary, recommend a revised payment schedule on any outstanding balance for approval by the Court.

*Id*. The judgment also clearly stated the following: "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment." *Id*. The next day, the sentencing court entered an amended judgment that added co-defendants as joint and severally liable for the restitution. *Id*., at Doc. 140. However, the instructions for payment remained the same in the amended judgment. *Id*.

On November 27, 2024, Petitioner entered into an Inmate Financial Plan to pay a total of $100.00 per month starting in December of 2024 towards the assessment and the restitution. (Doc. 16-5.) The inmate activity record indicates that Petitioner was placed in "IFRP 'REFUSED'"[1] status for failing to make the February 2025 payment in full. (Doc. 16-8, p. 3.)[2] Specifically, it states that Petitioner's payment was $40.18 short. (*Id*.)

[1] Inmate Financial Responsibility Program ("IFRP").

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

On March 4, 2025, Petitioner entered into an Inmate Financial Plan to pay a total of $200.00 per month starting in April of 2025 towards the restitution. (Doc. 16-6.) On July 16, 2025, Petitioner was listed as refusing to pay the July of 2025 payment in the Inmate Activity Record. (Doc. 16-8, p. 3.)

On July 24, 2025, Petitioner entered into an Inmate Financial Plan to pay a total of $125.00 per month starting in August of 2025 towards the restitution. (Doc. 16-7.) The Inmate Activity Record states that on October 7, 2025, Petitioner refused his October of 2025 payment. (Doc. 16-8, p. 2.)

On October 28, 2025, Petitioner entered into an Inmate Financial Plan to pay a total of $60.00 per month starting in November of 2025 towards the restitution. (Doc. 16-9.)

The Inmate Activity Record states that Petitioner's prerelease status was reviewed on January 8, 2026 and it was determined that time credits earned under the Fist Step Act were not applied. (Doc. 16-8, p. 2.)

Petitioner's FSA Time Credit Assessment disallowed Petitioner 27 days from July 16, 2025 to August 12, 2025 and 21 days from October 7, 2025 to October 28, 2025 based on a refusal to pay his restitution. (Doc. 16-11.)

On December 18, 2025, the court received and docketed Petitioner's Section 2241 petition alleging that he was erroneously placed on IFRP refusal status for alleged non-payment and loss of earned time credits under the First Step act as

punitive action. (Doc. 1.) Petitioner alleges that the BOP's enforcement of the IFRP during incarceration directly contradicts the judgment payment order entered by the trial court, that he was arbitrarily placed in refusal status resulting in loss of employment among other consequences, and that the BOP unlawfully withheld earned time credits under the First Step Act. (*Id.*) As relief, Petitioner seeks an order requiring the BOP to cease and desist all IFRP collections not explicitly authorized by the sentencing court, direct the BOP to restore all withheld or disallowed FSA time credits and apply them retroactively to his sentence, and the removal of all refusal designations. (*Id.*) Accompanying the petition was a document Petitioner titled "Expedited Motion for Emergency Judication And Support Memorandum for Writ of Habeas Corpus 28 U S C 2241" that was docketed as a motion but reads as a memorandum in support of the petition. (Doc. 2.)

## VENUE

A § 2241petition must be filed in the district where the petitioner is in custody. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95 (1973) ("The writ of habeas corpus does not act upon the person who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.") Petitioner was housed at FCI-Allenwood in Union County,

Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b). Therefore, this court is the proper venue for the action.

## The IFRP

The BOP established the IFRP to assist incarcerated individuals with satisfying their court-ordered financial obligations. *See* 28 U.S.C. § 545.10; BOP Program Statement 5380.08, Inmate Financial Responsibility Program (Aug. 15, 2005) ("PS 5380.08") at 1. Through the IFRP, the BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations," *see* 28 C.F.R. § 545.10, which include, *inter alia*, special assessments, court-ordered restitution, as well as fines and court costs. *See id.* § 545.11(a)(1)–(3). The BOP assists an inmate with financial obligations by having its unit staff "help th[e] inmate develop a financial plan" and "monitor the inmate's progress in meeting that obligation." *See id.* § 545.11.

The process of developing a financial plan for the inmate begins at their initial classification, during which "the unit team shall review [the] inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s)." *See id.* § 545.11(a). The unit staff will then develop a "documented" financial plan for the inmate. *See id.* In creating this plan, BOP staff reviews deposits to the inmate's trust account during the prior six (6) months, deducts IFRP payments

made for UNICOR[3] or non-UNICOR work assignments, then deducts $75 per month ($450 for six (6) months) from the inmate's account to allow them to have telephone communication through the Inmate Telephone System ("ITS"). *See id.* § 545.11(b). The BOP may require payment from any remaining balance toward restitution. *See id.* The IFRP establishes a minimum payment schedule of $25 per quarter for non-UNICOR or UNICOR Grade 5 inmates and 50 percent of monthly earnings for inmates assigned UNICOR Grades 1 through 4. *See id.* § 545.11(b)(1)–(2).

"The inmate is responsible for making satisfactory progress in meeting [their] financial responsibility plan and for providing documentation of these payments to unit staff." *Id.* § 545.11(b). The inmate may make "[p]ayments ... from institution resources or non-institution (community) resources." *See id.*

BOP staff are responsible for monitoring the inmate's "[p]articipation and/or progress in the [IFRP]," and conducting a review "each time [they] assess [the] inmate's demonstrated level of responsible behavior." *See id.* § 545.11(c). During the IFRP program review, BOP staff must:

---

[3] "UNICOR is the trade name of Federal Prison Industries, Inc., a self-sustaining government corporation that provides employment and job training to BOP inmates while producing marketable goods and services." *United States v. Lemoine*, 546 F.3d 1042, 1047 n.3 (9th Cir. 2008); *see also United States v. Allen*, 190 F.3d 1208, 1209 n.1 (11th Cir. 1999) ("UNICOR is a program through which inmates manufacture products pursuant to government contracts.").

> - determine the total funds deposited into the inmate's trust fund account for the previous six months;
> - subtract the IFRP payments made by the inmate during the previous six months; and
> - subtract $450 (i.e., $75 x 6 months, ITS exclusion).
>
> Any money remaining after the above computation may be considered for IFRP payments, regardless of whether the money is in the inmate's trust fund or phone credit account. The Unit Team has the discretion to consider all monies above that computation to adjust the inmate's IFRP payment plan.

*See* PS 5380.08 at 8. The unit manager has the authority to determine whether an inmate's IFRP payments are commensurate with their ability to pay and makes this determination on a case-by-case basis after considering each inmate's unique circumstances. *See id.*

To encourage inmates to pay their court-ordered financial obligations while in BOP custody, the BOP affords certain privileges to inmates who are participating in the IFRP that are unavailable to inmates who refuse to participate. An inmate's refusal to participate in the IFRP or refusal to comply with the provisions of their financial plan "ordinarily shall result" in the following:

> (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;
>
> (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);
>
> (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

> (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;
>
> (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;
>
> (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;
>
> (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);
>
> (8) The inmate will not be placed in a community-based program;
>
> (9) The inmate will not receive a release gratuity unless approved by the Warden;
>
> ...
>
> [(10)] The inmate will not receive an incentive for participation in residential drug treatment programs.

*See* 28 C.F.R. § 545.11(d). Additionally, inmates who refuse to participate in IFRP will not earn First Step Act ("FSA") time credits ("FTCs"). *See* Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (Nov. 18, 2022) ("PS 5410.01"), at 11 ("If an inmate refuses to participate in required programs (e.g., [IFRP], Drug Education, etc.), the inmate will not earn FTCs. While these programs are

voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs."); *see also Vargas v. Rivers*, No. 24-10703, 2025 WL 1380067, at *1–2 (5th Cir. May 13, 2025) (unpublished) (explaining that the IFRP and FSA "intersect because the [BOP] has designated the IFRP as" a "productive activit[y]" for purposes of earning FSA FTCs and that "[u]nder BOP regulation, '[a]n inmate may lose earned FSA Time Credits for violation of the requirements or rules of' a productive activity program" (quoting 28 C.F.R. § 523.43(a) and citing PS 5410.01)).

## SECTION 2241 STANDARD

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." *See Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." *See Woodall*, 432 F.3d at 242, 243 (citation omitted). Thus, Section 2241 allows a petitioner to challenge "the 'manner, location, or conditions of a sentence's execution.'" *See id.* at 242 (quoting *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)).

## DISCUSSION

### A. The Payment of Restitution During Incarceration is Not Inconsistent with the Judgment.

In *Cardona v. Bledsoe*, the Third Circuit found that challenges to "BOP conduct that conflicted with express statements in the applicable sentencing judgment" were actionable under Section 2241. *See* 681 F.3d at 536–37. Importantly, the Third Circuit explained that "to challenge the execution of [their] sentence under § 2241, [a petitioner] would need to allege that [the] BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *See id.* at 537. Here, Petitioner's assertion that the BOP's attempts to collect the restitution while he is incarcerated as inconsistent with his sentencing judgment is squarely within the court's jurisdiction under Section 2241.

As set forth above, Petitioner was ordered to pay an assessment of $100.00 and restitution of $3,287,200.00 with interest waived for the restitution. *Quaye*, No. 1:22-CR-0046-SE-2, Doc. 140. Special instructions for payment provided the following:

> Payment is ordered to begin immediately. Payments shall be made in equal monthly installments of $200 within 30 days of commencement of supervision and thereafter. Upon the defendant's commencement of supervision, the probation officer shall review the defendant's financial circumstances and, if necessary, recommend a revised payment schedule on any outstanding balance for approval by the Court.

*Id*. The judgment also clearly stated that "[u]nless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment." *Id*.

Petitioner asserts that the judgment only requires payment upon release to supervision: "The sentencing court expressly limited payments to begin upon commencement of supervision, not during imprisonment. Thus, the BOP's actions constitute an unlawful modification of a judicial sentence in violation of the separations of powers." (Doc. 2, p. 3.) However, Petitioner's interpretation of the judgment is not supported in the record. The judgment clearly states that payment is to begin immediately and "[u]nless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment." *Quaye*, No. 1:22-CR-0046-SE-2, Doc. 140. Therefore, Petitioner's argument premised on the statements contained in the judgment alone cannot succeed.

The court acknowledges that the Third Circuit has stated that "[i]n interpreting a sentencing court's statements, we inspect the sentencing transcript as well as the judgment the sentencing court entered." *United States v. Shvets*, 154, F.4th 74, 89 (3d Cir. 2025) (citing *Ruggiano v. Reish*, 307 F.3d 121, 133 (3d Cir. 2002)). Here, Petitioner did not submit a transcript of the sentencing hearing as evidence in support of his assertions concerning the alleged ambiguity of the

sentencing judgment. It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted); *see also Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982). Petitioner, by relying on the text of the judgment alone, has not met this burden. Therefore, his petition will be denied.

**B. The Court Lacks Jurisdiction To Address Petitioner's Challenges to Refusal Status and Denial of Time Credits Under the FSA.**

Petitioner's complaints about the BOP placing him in refusal status and the imposition of corresponding consequences do not relate to the execution of his sentence and, therefore, this court lacks jurisdiction to consider them. "[T]he IFRP has been upheld as constitutional and as fulfilling legitimate penological interests." *Thomas v. Ramirez*, No. 18-22064, 2018 WL 3015014, at *5 (S.D. Fla. May 30, 2018) (citing *McGhee v. Clark*, 166 F.3d 884, 886–87 (7th Cir. 1998)), report and recommendation adopted, 2018 WL 3014085 (S.D. Fla. June 15, 2018). "The consequences of choosing not to participate in the IFRP do not amount to constitutional violations." *Jordan v. Holt*, 488 F. App'x 587, 588 (3d Cir. 2012) (unpublished) (citing *United States v. Lemoine*, 546 F.3d 1042, 1049 (9th Cir. 2008); *see also Balter v. Martinez*, 477 F. App'x 873, 875 (3d Cir. 2012) ("Balter 'ha[s] no entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP would provide, such as work detail outside the prison

perimeter, a higher commissary spending limit, a release gratuity, or pay beyond the maintenance pay level.'" (quoting *Lemoine*, 546 F.3d at 1049)); *Duronio v. Gonzales*, 293 F. App'x 155, 157 (3d Cir. 2008) (unpublished) ("While being in the 'IFRP Refuse' category denies a prisoner certain privileges, it does not result in the imposition of discipline that would trigger a constitutionally protected interest.").

Similarly, his inability to apply certain earned time credits under the First Step Act does not rise to the level of a constitutional violation. *See, e.g., Alexandre v. Greene*, 2026 WL 264283, at *13 (M.D. Pa. Feb. 2, 2026) (finding that petitioner challenging his denial of earned time credits under the FSA based on his refusal status was not cognizable under Section 2241); *Garcia v. Ortiz*, No. 20-cv-01728, 2023 WL 1794752, at *2 (D.N.J. Feb. 7, 2023) ("Petitioner does not have a liberty interest [for due process purposes] in FSA Time Credits he might have earned from his UNICOR JOB, but for his finding of guilt of a prison code violation." (citation omitted)); *Gant v. King*, No. 23-cv-01766, 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023) ("Given the contingent nature of the application of FSA time credits to prerelease custody, they cannot reasonably be regarded as an entitlement."). Therefore, Plaintiff fails to state a cognizable Section 2241 habeas claim and, as such, this court lacks jurisdiction to address the merits of his petition with respect to this issue.

Even if the court had jurisdiction to consider the merits of the petition, it would fail. The Third Circuit has repeatedly emphasized that "participation in the IFRP is voluntary. The BOP only 'implements' the IFRP after a prisoner has chosen to participate in it." *See Jordan*, 488 F. App'x at 588. Thus, Petitioner, who repeatedly entered into IFRP contracts, "cannot be heard to complain about the unlawful action of scheduling his restitution payments after he elected participation in the IFRP." *See id.* (cleaned up) (citation omitted).

## CONCLUSION

For the reasons set forth above, the court will deny the petition and direct the Clerk of Court to term the pending motion for jurisdiction and support, which reads as a memorandum in support of the petition. The court will close the case.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 17, 2026